## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **NATIVE PIXEL INC.** | § | |
| | § | |
| | § | **Case No. 2:26-cv-00205-JRG-RSP** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **WAVEMAKER, INC.** | § | |
| | § | |

## WAVEMAKER, INC.'S MOTION TO DISMISS PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

**TABLE OF CONTENTS**

**Page**

I. SUMMARY OF THE ARGUMENT ...........................................................................1

II. NATURE AND STATE OF THE PROCEEDINGS .....................................................2

III. STATEMENT OF THE ISSUE ...............................................................................3

IV. STATEMENT OF FACTS ......................................................................................3

V. LEGAL STANDARD ............................................................................................7

    A. Rule 12(b)(6)..................................................................................................7

    B. Patent Eligibility Under 35 U.S.C. § 101....................................................8

VI. ARGUMENT..........................................................................................................9

    A. Claim 19 of the '335 Patent and Claim 6 of the '459 Patent Are Representative of the Asserted Patents as a Whole......................................................................9

    B. *Alice* Step One: The Claims Are Directed to the Abstract Idea of Converting GUI Design Information into Native Code .........................................................10

    C. *Alice* Step Two: The Claims Lack an Inventive Concept .........................12

    D. The Remaining Claims Add Nothing Material to the Eligibility Analysis................13

    E. Patent Eligibility Is Appropriate for Resolution at the Pleading Stage ....................15

    F. § 101 Standing Order Certification on Claim Construction ....................................16

VII. CONCLUSION.....................................................................................................17

DA 4730835.1

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018).................................................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................................*passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................7, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...............................................................9, 16

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017)..............................................................8, 12

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ...........................................................15

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..................................................................12

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)............................................................8, 10

*PersonalWeb Technologies LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ...................................................................11

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017)..................................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)..................................................................14

*Simio, LLC v. FlexSim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)........................................................*passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017).................................................................11

STATUTES

35 U.S.C. § 101...........................................................................................*passim*

DA 4730835.1

**RULES**

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................*passim*

DA 4730835.1

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Defendant WaveMaker, Inc. ("WaveMaker") respectfully moves to dismiss the Complaint for failure to state a claim because U.S. Patent Nos. 11,816,459 (ECF No. 1-1, Exhibit A to the Complaint, the "'459 patent") and 12,118,335 (ECF No. 1-2, Exhibit B to the Complaint, the "'335 patent") (collectively, the "asserted patents") claim patent-ineligible subject matter under 35 U.S.C. § 101.

## I.      SUMMARY OF THE ARGUMENT

The asserted patents claim nothing more than automating the well-known process of converting graphical user interface ("GUI") designs into device-specific code. The claims recite only high-level steps—identifying UI elements, associating them with functions, selecting and modifying templates, and generating output code—without specifying how those results are achieved at a technological level.

That is an abstract idea under *Alice* step one. The claims simply take a longstanding design-to-code workflow and express it as a sequence of functional results, untethered to any particular technological implementation. As the patents and the Complaint confirm, the alleged invention is merely the automation of translating GUI inputs into native code—an information-processing task long performed by developers.

At *Alice* step two, the claims add nothing that could render that idea patent eligible. They rely on generic components—processors, storage media, front-end tools, translation layers, and templates—performing their ordinary functions, and they provide no algorithm, rule set, or technical mechanism for carrying out the claimed results. Courts have consistently held that such claims—directed to automating a known process using conventional computing components—lack an inventive concept as a matter of law.

Although the claims invoke terms such as "recursive template selection," "tree data structures," and a "translation layer," they do so only at a high level of abstraction and do not specify any concrete algorithm or technical mechanism.

1

The remaining claims fare no better. They merely narrow the abstract idea to particular GUI elements, standard programming constructs, or routine variations based on device characteristics, none of which alters the analysis or supplies any inventive concept.

This case presents no factual dispute that would preclude resolution at the pleading stage. The asserted patents, their specifications, and the Complaint all describe the same thing: a generalized, template-based approach to generating code from GUI inputs using conventional techniques. Because the claims are directed to an abstract idea and recite no technological improvement or non-conventional implementation, they are ineligible under § 101.

## II.    NATURE AND STATE OF THE PROCEEDINGS

Native Pixel filed this action on March 16, 2026, alleging infringement of the '459 patent and the '335 patent, and identifying claim 6 of the '459 patent and claim 19 of the '335 patent as exemplary claims. (Compl. ¶ 66, 81).

The asserted patents share a common specification and are directed to the same abstract idea: "converting graphical user interface (GUI) design elements into API-integratable computer code (including native code) and logic." '459 patent, Abstract; '335 patent, Abstract.

This motion presents a threshold legal question under 35 U.S.C. § 101. For purposes of this motion, the Court may accept Plaintiff's characterization of the claims as set forth in the Complaint and its exhibits and does not need to resolve claim-construction disputes or factual issues.  The claims, specifications and Complaint provide a sufficient record to confirm the lack of patent eligibility as a matter of law at the pleadings stage.

No claim construction or factual development is required to resolve the legal issue presented in this motion. The asserted patents, on their face, are directed to the abstract idea of

2

generating code from GUI design inputs using conventional software components and techniques and offer nothing "more" to make them eligible under *Alice*.[1]

Accordingly, this case is at the pleading stage and presents a straightforward question of patent eligibility under 35 U.S.C. § 101 that can and should be resolved with dismissal under Rule 12(b)(6).

## III.    STATEMENT OF THE ISSUE

Section 101 precludes patent protection for claims directed to abstract ideas unless the claims contain an inventive concept sufficient to transform the claimed subject matter into a patent-eligible application.

The asserted patents are directed to converting GUI design information into native or API-integratable computer code using conventional computer components and software-development techniques, and they do not recite an inventive concept beyond that alleged abstract idea.

The issue presented is whether, taking Plaintiff's allegations as true, the asserted patents are patent ineligible as a matter of law under 35 U.S.C. § 101 such that the Complaint should be dismissed under Rule 12(b)(6)?

## IV.    STATEMENT OF FACTS

The asserted patents are directed to a "user interface (UI) Platform system for converting graphical user interface (GUI) design elements into API-integratable computer code (including native code) and logic." ('459 patent, Abstract; '335 patent, Abstract). The specifications describe a software-development workflow involving the coordination of "front-end design," "back-end development," and "data management," identifying "a need for a single integrated front design and back end development solution." '459 patent, 1:43-45,

---

[1] Should the Court deny this motion, Wavemaker reserves the right to raise claim construction issues, and challenge factual assertions in this (and other) proceedings.

3

2:23-25; '335 patent, 1:43-45, 2:23-25.  In other words, a standard workflow at the time of the alleged invention.

Consistent with that description, the patents disclose and claim at a high-level a conversion process in which a system accepts graphical input, identifies a target device, selects templates, modifies those templates, and produces native source code. '459 patent, 4:1-3, cl. 6**;** '335 patent, 3:67-4:2, cl. 19.

The specifications describe this process as a template selection algorithm that "accepts at least one graphic file" representing an intended GUI, receives information about a target device, and selects templates—recursively—from a predefined set to generate corresponding code. '459 patent, 5:38-40, 50-51, 56-63; '335 patent, 5:38-40, 50-51, 56-63.

Figure 4 illustrates this general workflow as a series of high-level functional steps: receiving graphical input, identifying the output device, selecting and modifying templates, and generating native source code:



Ex. A, '459 patent, Fig. 4; Ex. B, '335 patent, Fig. 4.

The claims describe these operations in purely functional terms, for example:

"recursively selecting one or more templates,"

"modifying the one or more templates," and

"updating the one or more feature-based templates",

***without defining any specific data structures, algorithms, or rules that govern how such selections or modifications are performed in a manner that improves computer functionality.*** ('459 patent, cl. 6 (d); '335 patent, cl. 19 (e), (f), (h)).  Rather than reciting a specific technological implementation, the claims merely state the desired results of these operations, reflecting the use of generic programming techniques without any inventive or unconventional application, or detailed "how" to do it in an inventive way.

Claim 19 of the '335 patent, identified as exemplary in the Complaint (¶ 81), recites a system including generic computer components (a processor, a storage medium, a front-end development tool with a UI element, a translation layer, and a template-based process for converting function data into native code:

19.     A user interface (UI) Platform system comprising:

**19[a]** a computer processor; and

**19[b]** a computer readable non-transitory storage medium coupled to the processor and containing:

**19[c]** a front end development software tool comprising at least a first UI element associated with a first function,

**19[d]** a translation layer associating the function associated with the first UI element with a device native computer code associated with a first device, and

**19[e]** a template that converts data of the first function into computer code that is native to the first device by recursively selecting one or more templates for each portion in a tree data structure, **19[f]** modifying the one or more templates to create output native source code, **19[g]** selecting one or more feature-based templates for one or more predetermined features, **19[h]** and updating the one or more feature-based templates with the native source code and the UI element.

'335 patent, cl. 19 (elements in bold supplied).

5

DA 4730835.1

Claim 6 of the '459 patent, also identified as exemplary in the Complaint (¶ 66), is materially similar and likewise recites a system with the same generic computer elements: 6. A system, comprising:

**6[a]** a hardware processor;

**6[b]** a front-end development software tool executed by the processor and having a first user interface (UI) element associated with a first function;

**6[c]** a translation layer for associating the function associated with the first UI element with a device native computer code associated with a first device that converts the code representing the image in the first device into usable code to recreate the identical image in a second device; and

**6[d]** a template that converts data from the first function into computer code that is native to the second device by recursively selecting one or more templates for each portion in a tree data structure, modifying the one or more templates to create output native source code, selecting one or more feature-based templates for one or more predetermined features, and updating the one or more feature-based templates with the native source code and one or more graphical user interface (GUI) design elements.

'459 patent, cl. 6 (elements in bold supplied).

Both claims recite comparable systems using conventional software components -- processors, front-end tools, translation layers[2] and template – to convert GUI-related inputs into device-specific code through template selection, modification, and output generation.

The independent claims (not called out in the Complaint, but otherwise included in the scope of the assertion) follow the same general approach. Independent claims recite materially similar structures and processes, and the dependent claims add limitations such as particular GUI elements, device characteristics, or implementation details without altering the overall functional workflow.

---

[2] There are minor differences in the translation between claim 6 and claim 19, but these differences do not amount to an inventive concept. While the translation layer in claim 6 is translating from an image, claim 19 is even more abstract because it does not provide what it is translating from. Even the specification offers no support on "how" this transactions layer is accomplished.

DA 4730835.1

The Complaint characterizes the patents as directed to "abstracting user interface characteristics into environment-independent formats" and "automatically generating platform-native source code from design inputs," including through "recursive template selection for native code generation." Compl. ¶¶ 6, 9.

Put simply, these steps are directed to automating the process of converting GUI design/function information into native computer code using conventional software components and generic computer parts.

Thus, the relevant facts for this Motion remain the claim language and the specifications' description of a template-based GUI design-to-code conversion process, and the Complaint's admission as to the abstract nature of the patent.

The claims remain directed to template-based conversion of GUI inputs into code using high level generic computer components and processes, and no details on how to achieve the claimed results.

## V.    LEGAL STANDARD

### A.    Rule 12(b)(6)

Under Rule 12(b)(6), dismissal is appropriate where the complaint fails to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts allow the Court to draw a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss, the Court accepts well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff but need not accept legal conclusions couched as factual allegations. *Id.*

"A patent may be determined ineligible at the Rule 12(b)(6) stage [where as here] … there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir.

7

DA 4730835.1

2020)(citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

### B.        Patent Eligibility Under 35 U.S.C. § 101

Section 101 defines patent-eligible subject matter but excludes laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

Determining patent eligibility involves a two-step framework.

At step one, the Court determines whether the claims are directed to an abstract idea. *Id.* at 218. In doing so, the Court considers the focus of the claims and their character as a whole. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016).

If the claims are directed to an abstract idea, the Court proceeds to step two and considers whether the claim elements, individually or as an ordered combination, contain an "inventive concept" sufficient to transform the nature of the claim into a patent-eligible application. *Alice*, 573 U.S. at 221 To satisfy this step, the claims must recite more than well-understood, routine, and conventional activities performed using generic computer components. *Id.* at 225.

The mere recitation of a generic computer or the use of conventional software components to perform an otherwise abstract process does not render a claim patent eligible. *Id.* at 225-26. Nor does limiting the abstract idea to a particular technological environment supply an inventive concept. *Id.* at 226.

Further, claims that merely recite the automation of a longstanding manual process using generic computer components, without specifying how the claimed results are technologically achieved, are not patent-eligible. *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

8

Courts routinely resolve § 101 challenges at the pleading stage where the claims recite an abstract result at a high level of generality, use conventional computer technology, and do not claim a specific technological improvement in computer functionality. *See*, *e.g.*, *Simio*, 983 F.3d at 1363–64.

## VI.    ARGUMENT

Native Pixel's Complaint should be dismissed because the asserted claims are patent-ineligible under 35 U.S.C. § 101. The claims are directed to the abstract idea of translating GUI design information into device specific code -- an automated version of a longstanding software-development workflow. They do not recite an inventive concept sufficient to render that idea patent eligible. Thus, WaveMaker respectfully requests that the Court dismiss this case with prejudice pursuant to Rule 12(b)(6).

### A.    Claim 19 of the '335 Patent and Claim 6 of the '459 Patent Are Representative of the Asserted Patents as a Whole

Courts may treat claims as representative where they are "substantially similar and linked to the same abstract idea", and the patentee does not identify materially different limitations. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Here, the Complaint identifies claim 6 of the '459 patent and claim 19 of the '335 patent as representative and alleges that all accused instrumentalities infringe "in the same general way." (Compl. ¶¶ 66, 81, & Exs. C & D). Indeed, these claims recite the same core components and functional steps: a processor, a front-end development tool, UI elements, a translation layer, and a template based process for generating native code through recursive selection and modification.

Critically, neither the representative claims nor the specification describe how these results are achieved at a technical level. They do not define any algorithm for selecting or modifying templates, any rules governing recursive processing, or any mechanism for

9

translating UI inputs into code.   Instead, they recite only functional results implemented using generic computing components.

Because the claims share the same structure, limitations, and focus, they rise or fall together under § 101.

### B.  *Alice* Step One: The Claims Are Directed to the Abstract Idea of Converting GUI Design Information into Native Code

Under *Alice* step one, the Court considers the focus of the claims and their character as a whole. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). The representative claims are directed to the abstract idea of mapping GUI design elements and their associated functions to device-specific computer code using template-based rules and recursive selection processes.

At their core, the claims recite a sequence of high-level, generic data-processing steps: identifying interface elements, associating them with functions, selecting templates, modifying templates, and generating output code.

These steps are expressed at a high level of generality and describe what is achieved, but not how it is achieved.

Although the claims reference concepts such as "recursive template selection," "tree data structures," and a "translation layer," they do so only at a high level of functional abstraction. The claims do not specify any concrete algorithm, rule set, or technical mechanism governing how these operations are performed. The claims do not define:

- any algorithm for selecting or ranking templates,
- any rules governing the recursive traversal of the tree data structure, or
- any concrete mechanism by which UI elements are translated into device-native code.

Significantly, missing from each of these claims is any inventive or detailed "how" these functions or results are achieved.   This is not enough.   Courts have repeatedly held that

10

DA 4730835.1

such result-oriented functional claiming is indicative of abstraction. *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-1339 (Fed. Cir. 2017).

The specifications and the Complaint confirm the abstract nature of the alleged invention. The specifications describe generating code from graphical inputs through template-based processing, but offer no inventive details of how to do it other than automating the general abstract manual process. The Complaint likewise characterizes the invention as "abstracting user interface characteristics" and "automatically generating platform-native code from design inputs." Compl. ¶ 6. These descriptions reflect the transformation of information from one form (GUI design) to another (source code), rather than any improvement to computer functionality.

They also mirror a conventional software-development workflow. The Complaint explains that designers historically created visual mockups that developers then "painstakingly recreated as handwritten, platform-specific code." Compl. ¶ 7. The asserted claims place that same process into an automated environment but do not change its underlying character. Federal Circuit precedent consistently holds that such claims are abstract:

- In *Simio, LLC v. FlexSim Software Prods., Inc.*, the Federal Circuit held that claims directed to "using graphics instead of programming to create object-oriented simulations", are abstract, because merely replacing traditional programming with a graphical interface recites an abstract idea. 983 F.3d 1353, 1363-1364 (Fed. Cir. 2020).

- In *RecogniCorp, LLC v. Nintendo Co.*, the court held that "encoding and decoding image data" is an abstract idea and ineligible under *Alice* step one. 855 F.3d 1322, 1326 (Fed. Cir. 2017).

- In *PersonalWeb Technologies LLC v. Google LLC*, the Federal Circuit affirmed that automation of conventional information-processing activity using generic

11

computers does not, by itself, make claims patent eligible. 8 F.4th 1310, 1316-18 (Fed. Cir. 2021). *Accord Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016).

The claims fall squarely within established precedent: they convert GUI design data into source code through high-level functional steps, automating a process long performed by developers. Considered as a whole, the claims are directed to the abstract idea of translating GUI design information into code using generalized, functional steps untethered to any specific technological implementation.

### C.        *Alice* Step Two: The Claims Lack an Inventive Concept

At *Alice* step two, the claims fail because they add only conventional components performing their ordinary functions. They rely on generic elements—processors, storage media, front-end tools, translation layers, and templates—used in routine ways to implement the abstract idea.

The claims recite no specific improvement to computer functionality and do not disclose any non-conventional hardware or software. Instead, they merely automate a familiar design-to-code conversion process—translating UI elements into device-specific code using conventional programming techniques. Plaintiff's allegations confirm the absence of any inventive concept. The Complaint describes the purported invention in functional terms—automatically generating code from UI inputs—and attributes benefits such as efficiency and automation. (Compl. ¶ 10).

But the law is clear -- automating a preexisting manual workflow, is not a technological improvement in computer functionality. *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017)("mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology").

12

Nor do the claims disclose any non-conventional implementation. They do not define any algorithm for template selection, any concrete rules for recursive processing, or any mechanism for translating UI inputs into device-native code. Instead, they recite only the desired results without specifying how those results are achieved.

Likewise, the Complaint uses the same result-oriented terms to describe its assertions that WaveMaker purportedly infringe these claims: alleging that it "abstracts user interface design elements" and generates native code. Compl. ¶ 29. Controlling precedent confirms that such claims lack an inventive concept. The Federal Circuit has repeatedly held that implementing an abstract idea using generic components, or automating a conventional process, does not render claims patent eligible. As the Federal Circuit explained in *Simio*, "a claim directed to the idea of using graphics instead of programming to create object-oriented simulations—maybe a new idea, but still an abstract one—and lacking any inventive concept, any meaningful *application* of this idea, sufficient to save the claim's eligibility." *Simio*, 983 F.3d at 1364. Because the claims recite only an abstract idea implemented using conventional techniques, and because the Complaint alleges no specific technological improvement or unconventional implementation, the asserted patents fail *Alice* step two.

### D.     The Remaining Claims Add Nothing Material to the Eligibility Analysis

The remaining claims do not alter the § 101 analysis because they add only conventional, routine, and non-inventive limitations that merely apply the same abstract idea in predictable ways.

Similarly, the Complaint does not identify any additional claim that contains a materially different limitation bearing on eligibility, and the dependent claims confirm that the asserted patents are directed to the same abstract.

In the '335 patent, the dependent claims narrow the invention to ordinary, well-understood GUI content, including buttons (cl.2), photographs (cl.3), animations/movies

13

DA 4730835.1

(cls.4-5), storyboards (cl.6), tables (cl.7), and timelines (cl.8). *See* '335 patent cls. 2–8, 12–14 (accord).  These limitations merely specify the type of information being processed and do not alter the underlying abstract process of converting GUI-related inputs into code. Limiting an abstract idea to particular types of content or user-interface elements does not supply an inventive concept under § 101. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168–70 (Fed. Cir. 2018) ("limitation of the claims to a particular field of information . . .  does not move the claims out of the realm of abstract ideas"). Other '335 patent claims add only standard programming constructs, such as generating source code for a GUI, detecting GUI features, or selecting templates based on known characteristics. *See Id*. cls. 10–11.

Still others recite routine responsive-design techniques, including generating or selecting code for different screen sizes or using listeners to detect display conditions and choose corresponding code. *See Id*. cls. 15–18.

Claim 20 likewise restates the overall concept of converting GUI design elements into API-integratable code without adding any technological detail.

None of these limitations reflects anything beyond well-understood, conventional software practices.

The '459 patent fares no better. Its dependent claims likewise add only conventional GUI features, standard device-specific adaptations, and routine programming steps such as template selection, modification, and compilation. *See* '459 patent cls. 2–5, 7–12.  Additional claims recite familiar responsive-display techniques, including generating or selecting code based on device characteristics such as screen size or display environment. *See Id*. cls. 13–16. These limitations reflect routine implementation details and the application of the same abstract idea in conventional computing environments.

Across both patents, the dependent claims simply add: (1) specific categories of GUI elements, (2) routine variations based on device or display characteristics, and (3) standard

DA 4730835.1

programming steps for selecting, modifying, and outputting code. *See* '335 patent cls. 2–8, 10–18, 20; '459 patent cls. 2–5, 7–16.

None of these limitations introduces any non-conventional or inventive technology, define any specific algorithm or technical mechanism, or improves the functioning of a computer beyond simply saying apply a computer.

Because the dependent claims do no more than apply the same abstract idea using conventional techniques and well-understood components, they do not supply an inventive concept. The claims therefore rise or fall together under § 101.

## E.       Patent Eligibility Is Appropriate for Resolution at the Pleading Stage

Dismissal is appropriate here because no factual dispute precludes resolution under § 101. The Complaint and the asserted patents confirm that the claims are directed to automating a conventional design-to-code process using generic components. The Complaint describes the alleged invention as "abstracting user interface characteristics into environment-independent formats" and "automatically generating platform-native source code from design inputs." (Compl. ¶ 6).

Those allegations reinforce, rather than rebut, the abstract nature of the claims and identify no specific improvement to computer functionality.

Plaintiff's allegations that the asserted patents are "foundational," "revolutionary," or address "core technical challenges" are conclusory and cannot defeat dismissal. (Compl. ¶ 5, 6, 11). Courts do not accept such characterizations as true where they are unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020).

The claims themselves recite only a processor, storage medium, front-end development tool, translation layer, templates, and code output which are all generic software components arranged to implement an abstract workflow.

DA 4730835.1

Resolution of this motion does not require claim construction or discovery because the claims fail on their face: they recite abstract results implemented with conventional components and no specific technological mechanism.

The relevant terms such as "computer processor," "computer readable non-transitory storage medium," "UI element," "translation layer," "template," and "native source code" are used in their ordinary functional sense. Even if construed in Plaintiff's favor, those terms describe standard computing components performing routine functions. Construing them cannot convert the claimed abstract idea into a patent-eligible technological improvement.

Finally, the claim charts attached to the Complaint underscore the absence of any factual dispute. They identify familiar software concepts within WaveMaker's accused products. That overlap confirms that the claims are directed to the application of known software techniques, not an inventive advance in computer technology.

Because the claims are directed to an abstract idea and lack any inventive concept, and because that conclusion is evident from the claims, specifications, and the Complaint itself, this action is appropriate for resolution at the Rule 12 stage. *See Simio*, 983 F.3d at 1365; *Content Extraction*, 776 F.3d 1343 at 1349.

### F.        § 101 Standing Order Certification on Claim Construction

WaveMaker has complied with the Court's standing order governing pre-Markman motions under 35 U.S.C. § 101 ("§ 101 Standing Order"). As reflected in the parties' correspondence (attached as Exhibit A), WaveMaker requested that Native Pixel identify whether it contends that any claim term requires construction for purposes of resolving patent eligibility and offered to conduct the required lead-counsel meet-and-confer prior to filing. Native Pixel declined to identify any such term and instead asserted that it was not required to take a position absent further disclosures, stating, for example, that it "cannot take a meaningful

16

position on a motion [it has] never seen" and "cannot assess whether any claim term requires construction" without additional information.

In doing so, Native Pixel attempted to impose requirements not found in the Court's § 101 Standing Order, including providing a draft of this Motion or eligibility contentions supported by extrinsic evidence in advance of filing—materials that are not expressly required by the § 101 certification procedure nor appropriate for a Rule 12(b)(6) motion, which is confined to the pleadings and the patents themselves.

The Court's certification procedure requires only that the parties confer in one-on-one communications to discuss whether claim construction is necessary and, if they disagree, proceed with the motion and submit a post-filing joint letter identifying any dispute. That is precisely the process WaveMaker attempted to follow, including through both email correspondence and a phone conference between lead counsel on May 22 before filing this Motion.  Although no dispute has yet been identified, because Native Pixel counsel advised that it was not a position to meet and confer on the merits until it reads this motion and has refused to take a position on claim construction, The correspondence between counsel in advance of that meet and confer is included as Exhibit A. Accordingly, WaveMaker has indicated that the parties disagree and will subsequently file the joint letter within 10 days of this motion as required by the respective standing order.

## VII.    CONCLUSION

For the foregoing reasons, WaveMaker respectfully requests that the Court dismiss Native Pixel's Complaint in its entirety. Because eligibility turns on the asserted claim language and specifications, and amendment cannot change those materials, leave to amend would be futile and dismissal should be with prejudice

17

Dated: May 22, 2026

Respectfully submitted,

*/s/ Brett M. Pinkus*

Brett Pinkus
Texas Bar No. 24076625
bpinkus@spencerfane.com
**SPENCER FANE, LLP**
2200 Ross Avenue, Suite 1700
Dallas, Texas 75201-2708
Telephone: 214.750.3610
Facsimile: 214.750.3612

Charles Robert Macedo (*pro hac vice forthcoming*)
**AMSTER, ROTHSTEIN & EBENSTEIN LLP**
405 Lexington Avenue
New York, New York 10174
cmacedo@arelaw.com
(212) 336-8000

**Counsel for Defendant WaveMaker, Inc.**

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER

I hereby certify that the parties disagree on whether prior claim construction is needed to inform the Court's analysis as to patent eligibility as is explained in Sec. VI.F herein.

*/s/ Brett Pinkus*
Brett Pinkus

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy has been electronically filed using the CM/ECF filing system on May 22, 2026, which will automatically send email notifications to all counsel of record and permit viewing and downloading of the same from the CM/ECF system.

*/s/ Brett Pinkus*
Brett Pinkus

18

DA 4730835.1