June 1, 2026
**VIA CM/ECF**

Honorable Roy S. Payne
United States District Court for the Eastern District of Texas
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, TX 75670

**Re:**    *Native Pixel Inc. v. WaveMaker, Inc.*, No. 2:26-cv-00205-JRG-RSP
        Wavemaker's Motion to Dismiss pursuant to Rule 12(b)(6) [Doc. 17]
        Joint Letter pursuant to Court's Standing Order Regarding Motion under 35 U.S.C. § 101

Dear Judge Payne:

Plaintiff Native Pixel Inc. ("Native Pixel") and Defendant WaveMaker, Inc. ("WaveMaker") respectfully submit this joint letter pursuant to the Court's Standing Order Regarding Motions under 35 U.S.C. § 101. The parties have conferred regarding whether any claim-construction issues must be resolved before the Court decides WaveMaker's Rule 12(b)(6) motion to dismiss [Doc. 17]. The parties have identified the following dispute regarding whether claim construction is necessary before resolution of WaveMaker's Rule 12(b)(6) motion to dismiss.

Dated: June 1, 2026                                    Respectfully submitted,

/s/ Erick S. Robinson                                  /s/ Brett M. Pinkus
Erick S. Robinson (Lead Counsel)                       Brett M. Pinkus
Texas Bar No. 24039142                                 Texas Bar No. 24076625
Mark D. Siegmund                                       bpinkus@spencerfane.com
Texas Bar No. 24117055                                 **SPENCER FANE LLP**
"Grace" Shuya Yang                                     2200 Ross Avenue, Suite 1700
Texas Bar No. 24144144                                 Dallas, Texas 75201-2708
**CHERRY JOHNSON SIEGMUND JAMES PC**                   Telephone: 214.750.3610
7901 Fish Pond Road, Suite 200                         Facsimile: 214.750.3612
Waco, TX 76710
Tel: (713) 498-6047                                    Charles Robert Macedo (*pro hac vice*)
Fax: (713) 583-9737                                    **AMSTER, ROTHSTEIN & EBENSTEIN**
erobinson@cjsjlaw.com                                  **LLP**
                                                       405 Lexington Avenue
Gregory Love                                           New York, New York 10174
Texas Bar No. 24013060                                 cmacedo@arelaw.com
**CHERRY JOHNSON SIEGMUND JAMES PC**                   Telephone: 212.336.8000
104 E Houston Street, Suite 115
Marshall, TX 75670                                     *Attorneys for Defendant*
                                                       *WaveMaker, Inc.*

    *Attorneys for Plaintiff Native Pixel, Inc.*

1

**Defendant WaveMaker's Position**

WaveMaker's position is that no claim construction is necessary before the Court resolves WaveMaker's § 101 motion. The asserted claims are ineligible under their plain and ordinary meaning and under any plausible construction of the terms identified by Native Pixel. Although Native Pixel contends that the claimed generic GUI and programming components require construction, its proposed readings do not identify any claim meaning that would alter the eligibility analysis. Instead, Native Pixel seeks to import alleged advantages from the specification—such as eliminating middleware frameworks, reducing processor usage, or improving performance—without tying those advantages to concrete limitations recited in the asserted claims. Further, Native Pixel fails to assert how these functions are accomplished.

Native Pixel's letter confirms this point. Rather than identifying disputed claim terms, explaining why construction is necessary, and providing proposed constructions, Native Pixel largely treats the letter as a response brief to WaveMaker's § 101 motion. It argues the merits of eligibility, invokes specification language and prosecution history, and contends that WaveMaker's motion should be denied. But those arguments do not create a material claim-construction dispute. The relevant question for this letter is whether any claim term requires construction before the Court can resolve § 101. Native Pixel has not identified any proposed construction that would change the eligibility analysis.

The parties' disagreement is therefore not a material claim-construction dispute that must be resolved before eligibility. The dispute is a legal one: whether claims directed to abstracting UI information, selecting templates, and generating code are patent eligible merely because the specification describes those functions as useful, efficient, or performance-enhancing. WaveMaker's position is that they are not. Even accepting Native Pixel's characterizations of the disputed terms, the claims remain directed to the abstract process of converting one form of information—a user-interface design or image—into another form of information—platform-specific source code—using rules, templates, mappings, and conventional computing components. Each of the five terms describes abstract, conventional concepts—regardless of how Native Pixel attempts to dress them up.

Each of the five terms describes abstract, conventional concepts—regardless of how Native Pixel attempts to dress them up.

**1. "Translation layer"**

Whether framed as a framework-eliminating component or an intermediary that generates code, a "translation layer" simply describes converting information from one format or representation into another. That is a paradigmatic abstract idea. Native Pixel's own position reinforces the point: it admits that the Patent Office found "translation layer" indefinite and construed the term to perform the claimed cross-device functionality. But that construction remains purely functional. It identifies only the desired result and not any concrete or unconventional technological means.

**2. "Recursively selecting … in a tree data structure"**

This term refers to using well-known data structures (trees) and routine traversal techniques (recursion) to process information. Generic computer functions such as organizing and processing

data are insignificant, routine activity that are considered abstract. Native Pixel's attempt to point to an alleged "best fit" selection does not change the analysis—the claims still recite only the result of selecting, not a specific technological improvement in how computers perform recursion or tree traversal.

### 3. "Feature-based templates," "predetermined features," and "updating"

These terms describe organizing, categorizing, and reusing information using templates—longstanding and conventional programming practices. Labeling templates as "feature-based" or describing an "updating" step does not impose meaningful limits. The claims do not specify any particular structure, data model, or implementation details. Instead, they recite functional results: selecting templates and updating them.

### 4. "Device native computer code" / "native source code"; "recreate the identical image"

These terms merely specify the intended output of the claimed process—code adapted for a particular device and reconstruction of a UI image. Generating device-specific code or reproducing visual layouts across platforms is itself an abstract goal. The claims do not recite a specific improvement in compilation, rendering, or device operation.

### 5. "UI platform system" / "front-end development software tool"

These are generic computing environments in which the claimed steps are performed. Limiting an abstract idea to a particular field or environment does not make it patent-eligible. The alleged points of distinction identified by Native Pixel remain software-implemented information-processing steps. They do not change how computers operate; they use computers to automate the design-to-code workflow.

Native Pixel's submission confirms that claim construction is unnecessary to resolve § 101. Its arguments depend primarily on details drawn from the specification and prosecution history—not limitations actually recited in the claims—and its asserted disputes concern the level of specificity or characterization of functional terms, not competing constructions that would materially change claim scope. Most importantly, Native Pixel does not identify any proposed construction that would transform the claims from abstract information processing and code generation into a concrete technological improvement.

Accordingly, WaveMaker's position is that the Court need not defer the § 101 motion for claim construction. WaveMaker does not ask the Court to adopt any special construction to find the claims ineligible, and Native Pixel has not identified any construction that would make the claims patent eligible. Because Native Pixel has not identified any material claim-construction dispute that would affect eligibility, there is no basis to defer § 101. The Court can decide WaveMaker's § 101 motion now.

**Plaintiff Native Pixel's Position**

**I. The Court cannot reach § 101 before construing the disputed terms.** Because eligibility "requires a full understanding of the basic character of the claimed subject matter," claim construction "will ordinarily be desirable—and often necessary—" first. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). Where the parties dispute construction at the Rule 12 stage, the court "must either adopt the non-moving party's constructions or resolve the dispute"; failing to do so "is error." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379–80 (Fed. Cir. 2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

These are not ordinary terms. Each was added by amendment to secure allowance: the "recursively selecting… in a tree data structure," "feature-based templates," and "updating" limitations overcame an *Alice*/§ 101 "Mental Processes" rejection in the '335 patent, and in the '459 patent replaced original claims the Examiner rejected as abstract under the authority WaveMaker invokes—*Electric Power Group* ('335 FH, OA (June 14, 2024); '459 FH, OA (Oct. 1, 2018)). Their meaning is disputed and outcome-determinative.

**II. The terms requiring construction.**

**1. "translation layer"** ('459 cl. 6[c]; '335 cl. 19[d]). The specification describes not a generic intermediary but a component that "eliminates the need for a middle-man framework because it directly generates the language specific code," "greatly improv[ing] performance by eliminating previously needed frameworks which consumed battery power, CPU usage, memory, and performance." '459, 3:34–39. The Examiner found the term indefinite and construed it to perform the cross-device function itself ('459 FH, OA 11–12 (June 4, 2023)), and WaveMaker concedes it differs between claim 6 ("from an image") and claim 19 (Dkt. 17 at 10 n.2). Whether it is a generic abstraction or the disclosed framework-eliminating component is dispositive of *Alice* step two. *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

**2. "recursively selecting one or more templates for each portion in a tree data structure"** ('459 cls. 1, 6[d]; '335 cl. 19[e]). WaveMaker says the claims give "no rules governing the recursive traversal of the tree" (Dkt. 17 at 10); the specification supplies them. The algorithm "parses the user interface tree," then "recursively selects the appropriate templates for each portion of the tree" to choose the "best fit template." '459, 5:9–18, 7:33–42; Fig. 4. Both Examiners allowed the claims on this limitation, added to overcome a § 112(a) rejection. '459 FH, Reasons for Allowance (Sept. 24, 2023); '335 FH (Aug. 20, 2024). So construed, the claims recite a specific process, not an abstract result. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco*, 837 F.3d 1299, 1314–16 (Fed. Cir. 2016).

**3. "feature-based templates"; "predetermined features"; and the "updating" step** ('459 cl. 6[d]; '335 cls. 19[g]–[h]). These coined terms have no ordinary meaning. The specification distinguishes general templates from "feature-based templates 11" tied to enumerated features ("buttons, text areas, animations, photographs, movies," etc.) and describes a feedback step that "updates the overall templates with the adjusted feature-based native source code." '459, 5:5–10, 6:13–37, 7:38–45; Fig. 4. Both Examiners' Reasons for Allowance recited the feature-based-template and "updating" steps as

4

the point of novelty. Whether a "template" is a generic code stub or the structured, feature-indexed artifact disclosed is material to whether the claims add "significantly more."

**4. "device native computer code" / "native source code"** ('459 cl. 6[c]–[d]; '335 cl. 19[d]–[h]); **and "recreate the identical image in a second device"** ('459 cl. 6[c]). The specification defines "native" technologically: the algorithm "compiles source code files in the code environment native to the receiving computing device," reducing processor "time and power usage… by at least ten percent." '459, 4:52–54, 5:19–26. Native Pixel distinguished the prior art because it "cannot generate UI front-end code that is human readable." '459 FH, Remarks (Aug. 14, 2023). Whether "native" requires platform-specific compilation controls the step-one focus. *Enfish*, 822 F.3d at 1335–36.

**5. "front-end development software tool"; "UI element associated with a … function"; preamble "User interface (UI) Platform system"** ('459 cl. 6[b]; '335 cl. 19[c]). The specification equates this purportedly "generic" tool (Dkt. 17 at 13) with a specific integrated "UI Platform"/"PixelFree Client" that imports layouts "as if they were an organic capability of the tool" and supplies "a single integrated front design and back end development solution." '459, 2:19–23, 3:28–34; Fig. 5. Whether the "UI Platform system" preamble limits—it drew § 112(b) rejections in both files—affects the claims "as a whole." *Enfish*, 822 F.3d at 1335.

**III. The disputed constructions are outcome-determinative and defeat the Motion.** WaveMaker's response concedes it "does not ask the Court to adopt any special construction," and argues the claims fail "[e]ven accepting Native Pixel's characterizations." But at the Rule 12 stage the Court must adopt the non-movant's constructions. *MyMail*, 934 F.3d at 1379–80; *see* Dkt. 17 at 16. Under Native Pixel's readings, the claims recite a specific, framework-eliminating translation layer and a best-fit recursive selection both Examiners found novel—a specific improvement at step one (*Enfish*; *McRO*) and a "non-conventional and non-generic arrangement of known, conventional pieces" at step two (*BASCOM*, 827 F.3d at 1350). WaveMaker's premise that Native Pixel "import[s] alleged advantages … without tying [them] to concrete limitations" fails on the claims' face: "recursively selecting … in a tree data structure," "feature-based templates," "updating," and "translation layer" are the express words of claims 6 and 19. And labeling "trees" and "recursion" "well-known" or "routine" does not help: whether these limitations are conventional is a fact question the Examiners' allowance forecloses. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–18 (Fed. Cir. 2019).

**IV. WaveMaker's refusal to commit is itself the dispute.** WaveMaker "reserv[ed] the right to raise claim construction issues" later (Dkt. 17 at 3 n.1, § VI.F), and its certification concedes "the parties disagree" (id. at 17). Its labels—"high-level," "generic," "result-oriented" (id. at 1, 5, 10)—are contested constructions it presses while denying any dispute exists, the error *MyMail* forbids. WaveMaker also refuses to serve the Eligibility Contentions the Court's Standing Order (July 25, 2019) requires *first*—an element-by-element showing that each limitation was "well understood, routine, and conventional"—while demanding Native Pixel's now. The Court should defer the § 101 motion until the disputed terms are construed or, adopting Native Pixel's constructions, deny it. *Aatrix*, 882 F.3d at 1125, 1128.